IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| COMMERCIAL FEDERAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CV391 |
| | ) | |
| v. | ) | |
| | ) | |
| DORADO NETWORK SYSTEMS CORPORATION, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before me is the plaintiff's motion for remand, filing 9. The plaintiff, Commercial Federal Bank ("Commercial Federal") filed a breach of contract action against Dorado Network Systems Corporation ("Dorado") in the District Court of Douglas County, Nebraska. Dorado removed the case to federal court on the basis of diversity subject matter jurisdiction alleging: 1) The amount in controversy exceeds $75,000; 2) Dorado is a California corporation with its principal place of business in California; and 3) Commercial Federal is a federally chartered savings bank and a citizen of Nebraska. Filing 1.

The parties do not dispute that the amount in controversy exceeds $75,000 or that the defendant is a California citizen. The parties further agree that Commercial Federal is a federal savings bank with its principal offices in Omaha, Nebraska. Filing 1, plaintiff's complaint at ¶ 1 and attached Master Agreement at 1; filing 11 (Cantrell affidavit–August 10, 2005) ¶ 4. Based on the undisputed evidence, Commercial Federal's charter was issued pursuant to the Homeowners' Loan Act, 12 U.S.C. § 1461. See filing 11 (Cantrell affidavit–August 10, 2005) ¶ 4; filing 15 (Commercial Federal reply brief) at p.4, n.1 (acknowledging typographical error in statutory citation).

The issue raised by the plaintiff's motion for remand is whether Commercial Federal is a Nebraska citizen for the purposes of diversity jurisdiction. Dorado claims Commercial Federal is a Nebraska citizen because its actions are sufficiently localized in Nebraska and its principal offices are in Omaha, Nebraska. Dorado also claims the policy reasons underlying federal diversity jurisdiction, that being to provide non-resident defendants with an unbiased forum for defending claims brought by resident plaintiffs, warrants exercising federal subject matter jurisdiction in this case. In contrast, Commercial Federal claims the chartering statutes for federal savings banks do not contain language providing for citizenship in a particular state; Commercial Federal operates a nationwide business, not a business localized in Nebraska; and, therefore, Commercial Federal is not a Nebraska citizen and diversity subject matter jurisdiction does not exist.

Having considered the evidence and arguments before me, I conclude Commercial Federal is a national citizen and not a citizen of Nebraska. Therefore, Commercial Federal and Dorado are not citizens of different states, and this case must be remanded for lack of subject matter jurisdiction.

## FACTUAL FINDINGS

Commercial Federal has submitted two affidavits in support of its motion for remand: the August 10, 2005 and the August 29, 2005 affidavits of Caren Cantrell, a Senior Vice President for Commercial Federal. Filings 11 and 16. The facts set forth in these affidavits are undisputed.

Commercial Federal's headquarters are located in Nebraska, but it has regional security offices, property and facility offices, employment centers, and commercial loan servicing centers in Iowa, Colorado, and Oklahoma.  In addition to these offices, Commercial Federal operates a facility and property office in Kansas, an employment center and a commercial loan servicing center in Missouri, and a commercial loan servicing center in Arizona.

As a federally chartered savings bank, Commercial Federal is authorized to conduct business in all states and territories of the United States.  Commercial Federal has internet banking customers in all fifty states and consumer credit card customers in forty-four states.  It owns or services mortgage loans in all fifty states and Puerto Rico, and as of July 31, 2005, less than 20% of its total residential mortgage servicing balance arose from Nebraska loans.

Commercial Federal operates 201 branch banking locations in the following 8 states:  Nebraska, Colorado, Iowa, Kansas, Oklahoma, Missouri, Arizona, and Nevada.  Of the 201 branch locations, 43 (less than 22%) are in Nebraska.  Commercial loans originate from branch locations in each of these eight states, with less than 13% of Commercial Federal's total commercial loan balance arising from Nebraska loans.  Commercial Federal receives consumer and commercial deposits through both internet banking and its branch offices located in each of the eight states except Nevada.  Nebraska consumer and commercial deposit balances account for less than 20% of the total of such balances held by Commercial Federal.

LEGAL ANALYSIS

As the party opposing remand to state court, Dorado has the burden of establishing federal subject matter jurisdiction. Green v. Ameritrade, Inc., 279 F.3d 590 (8th Cir. 2002); Quality Refrig. Servs., Inc. v. City of Spencer, 908 F. Supp. 1471, 1483 (N.D. Ia. 1995). All doubts as to the propriety of exercising federal jurisdiction over a removed case must be resolved in favor of remand. Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th Cir. 1997).

Dorado's removal notice alleges this court has diversity subject matter jurisdiction. As applied to this action, 28 U.S.C. § 1332(a)(1) provides:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States.

However, "[i]f a party is not a citizen of a state at all, then it is not a citizen of a different state and it would be inappropriate to allow that party to bring a case or be subject to federal jurisdiction based only on diversity of citizenship." Jakoubek v. Fortis Benefits Ins. Co., 301 F. Supp. 2d 1045, 1049 (D. Ne. 2003)(quoting Batton v. Georgia Gulf, 261 F. Supp. 2d 575, 582 (M.D. La. 2003).

28 U.S.C. § 1332(c) states that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." The purpose of this citizenship provision, which was added by amendment in 1958, was to reduce the number of cases involving corporate parties litigated in the federal courts

4

by making it more difficult for corporations to attain complete diversity.  Iceland Seafood Corp. v. National Consumer Co-op. Bank, 285 F. Supp. 2d 719, 722 (E.D. Va. 2003)(citing Burton v. United States Olympic Comm., 574 F. Supp. 517, 519 (C.D. Cal. 1983)).  The language of § 1332(c) is focused on the most common forms of corporations--those incorporated under state statutes.

Commercial Federal was not incorporated under any state's law.  It is a federally chartered corporation.  In the absence of any claim that the United States is the majority stockholder of a federally chartered corporation,[1] the analysis for determining the citizenship of such corporations depends on the statutory authority underlying the charter and the location of the actual business activities conducted by the corporation.  As succinctly explained in Iceland Seafood.

> The citizenship of a federally chartered corporation is determined by the express language of the chartering statutes and the geographic scope of activities authorized in those statutes. . . .  If the chartering statutes expressly provide for citizenship in a particular state, or incorporate the entity as a "body corporate" of a particular state, then a federally chartered corporation, even with wide spread actual and authorized activities, may have state citizenship for diversity purposes. . . .
>
> If this express provision is absent from the statutes, however, a federally chartered corporation

---

[1] A federal court has subject matter jurisdiction over actions involving federally chartered stock corporations where the majority of the capital stock is owned by the United States. See Hollus v. Amtrak Northeast Corridor, 937 F. Supp. 1110, 1113 (D.N.J. 1996)("Because a majority of the capital stock of Amtrak is owned by the United States, the federal courts have subject matter jurisdiction over any action involving Amtrak.").  Dorado does not argue and has presented no evidence in support of this basis for exercising federal jurisdiction.

5

> may still be a citizen of a particular state if its
> activities, either factually or by charter, are limited
> to a particular state. . . .  Otherwise, if the
> corporation is organized to do business in several
> states, and in fact does so, it has national
> citizenship and cannot base removal on the ground of
> diversity jurisdiction.

Iceland Seafood, 285 F. Supp. 2d at 723 (citing and relying on Bankers' Trust Co. v. Texas Pacific Rw. Co., 241 U.S. 295, 308-309 (1916); Little League Baseball v. Welsh Publishing Group, Inc., 874 F. Supp. 648, 651 (M.D. Pa. 1995); Burton v. United States Olympic Committee, 574 F. Supp. 517, 519 (C.D. Cal. 1983)(citing Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union, 272 F.2d 453, 454-456 (3d Cir. 1959)).  See also Weathermon v. Disabled American Veterans, 15 F. Supp. 2d 940, 941 (D. Ne. 1998)(Kopf, J.)(as a federally chartered corporation authorized to establish and maintain offices in every state with no particular situs state, the Disabled American Veterans is a citizen of the United States--not any one state--for jurisdictional purposes).

In evaluating Commercial Federal's citizenship, it is important to recognize the distinction between the charters and cases discussing the citizenship of national banking associations and federal savings banks.  Unlike federal savings banks (such as Commercial Federal), national banking associations are formed and chartered pursuant to 12 U.S.C § 21 et. seq.  Under 28 U.S.C.A. § 1348, "[a]ll national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."  This statutory language provides the basis for determining the state citizenship of national banking associations for the purpose of determining federal diversity.

6

In contrast, Commercial Federal's charter was issued pursuant to the provisions of the Homeowners' Loan Act, 12 U.S.C. § 1461 et. seq.  The Homeowners' Loan Act of 1933 created the Federal Home Loan Bank Board, (12 U.S.C. § 1464), and authorized the Board "to provide for the organization, incorporation, examination, operation and regulation" of Federal Savings and Loan Associations and "to issue charters therefor. . . ."  12 U.S.C. § 1464(a)(1).  <u>Provident Nat. Bank v. California Federal Sav. & Loan Ass'n</u>, 624 F. Supp. 858, 861 (E.D. Pa. 1985).  Unlike the statutory provisions applicable to national banking associations, there are no statutory provisions identifying whether and under what circumstances federal savings banks are considered citizens of a particular state for the purpose of determining diversity subject matter jurisdiction, or how such state citizenship is determined.  Moreover, the Homeowners' Loan Act contains no language authorizing federal savings banks to sue or be sued in all state and federal courts.  See e.g. <u>American National Red Cross v. S.G.</u>, 505 U.S. 247 (1992)(statutory language in federal charter authorizing American National Red Cross "to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States" confers original federal jurisdiction).

Since the Homeowners' Loan Act does not confer federal jurisdiction over all actions by and against federal savings banks, and it contains no statutory language providing for citizenship of federal savings banks in a particular state, this court does not have jurisdiction over Commercial Federal's state law claims absent a showing that Commercial Federal conducts sufficiently "localized" activities to be deemed a citizen of a state.  <u>Loyola Federal Sav. Bank v. Fickling</u>, 58 F.3d 603, 606 (11th Cir. 1995)(citing <u>Westcap Government Securities, Inc. v.</u>

7

Homestead Air Force Base Federal Credit Union, 697 F.2d 911, 911-12 n. 1 (11th Cir. 1983)(citing Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union, 272 F.2d 453 (3d Cir. 1959)).  The factors considered in deciding if a federally chartered corporation engages in "localized" business activities include "the corporation's principal place of business, the existence of branch offices outside the state, the amount of business transacted in different states, and any other data providing evidence that the corporation is local or national in nature." Loyola Federal, 58 F.3d at 606.  See also Auriemma Consulting Group, Inc. v. Universal Sav. Bank, 367 F. Supp. 2d 311, 313 (E.D.N.Y. 2005).

     While evidence relevant to prove "principal place of business" of a state corporation is also relevant to assessing whether a federally chartered business conducts "localized" business activities, the standard applied to this evidence differs.  A state corporation's principal place of business is the location where it conducts the majority of its business, and the corporation is a citizen of that state (and the state of its incorporation) irrespective of whether its conducts business on a nationwide basis.  However, the test for determining if a federally chartered corporation conducts a "localized" business is not based on a state-by-state comparison of the corporation's business activities, but rather requires a case-by-case "examination of whether or not the corporation conducts its activities over a widespread area."  Iceland Seafood, 285 F. Supp. 2d at 723.

     A corporation's activities need not be wholly limited to a single state to be considered "localized."  For example, where a defendant savings bank did extend out-of-state loans, but these

loans accounted for less than five percent of the bank's business, the bank maintained no out-of-state branches, most loans were in a single state, and the bank targeted its business activities to a single state, the bank conducted "localized" activity and was a state citizen. <u>Waldron Midway Enterprises, Inc. v. Coast Federal Bank</u>, 1992 WL 81724, *1 (E.D.N.Y. 1992). Similarly, where a bank had one out-of-state branch facility, but its remaining thirty branch facilities were located in one state, and two-thirds of the bank's residential mortgage loans were secured by property in that state, the bank's activity was localized and the bank was deemed a citizen of that state. <u>Loyola Federal</u>, 58 F.3d at 606.  See also <u>Provident Nat. Bank v. California Federal Sav. & Loan Ass'n</u>, 624 F. Supp. 858, 861 (E.D. Pa. 1985) (defendant's business activity was localized in California where 138, or 71%, of its branch offices and a substantial amount of its deposits and outstanding loans were located in California).

    In contrast, the court in <u>Iceland Seafood</u> held that even though the financial records, senior management, and nearly all employees of a national consumer cooperative bank[2] were located in one state, the bank's activities were national in scope and not localized where the bank made loans to entities in at least five states, and held a security interest in collateral and operated branch offices in several states.  <u>Iceland Seafood</u>, 285 F. Supp. 2d at 725-26.  Likewise, in <u>Auriemma Consulting</u>, the

---

[2] National consumer cooperative banks are chartered under the National Consumer Cooperative Bank Act, 12 U.S.C. § 3001-3051. Pursuant to 12 U.S.C. 3011, "[t]he principal office of the Bank shall be in Washington, District of Columbia, and, for the purpose of venue, shall be considered a resident thereof." <u>Iceland Seafood</u> held that this provision determines venue but not state citizenship for the purposes of jurisdiction.

court held that although a federal savings bank was headquartered in Wisconsin, all funds were deposited in and all loan proceeds were distributed from that state, and all administrative offices were located in Wisconsin, where the bank's authorized and actual business also included nationwide internet business solicitation and the majority of its credit card banking customers were not from Wisconsin, the bank's conduct was not sufficiently "localized" for the purposes of establishing state citizenship. The bank was a national citizen, and the court lacked diversity subject matter jurisdiction. <u>Auriemma Consulting</u>, 367 F. Supp. 2d at 314-15.

As applied to this case, Commercial Federal conducts internet banking and extends mortgage loans in all fifty states, and it has credit card customers in forty-four states. Commercial Federal is headquartered in Omaha, Nebraska, but it also maintains business locations in Iowa, Colorado, Oklahoma, Kansas, Missouri, and Arizona.  Branch banking locations exist in each of these states, Nebraska, and Nevada.  Nebraska has less than 22% of the branch locations; Colorado alone has more branch locations than Nebraska.  In terms of the actual volume of financial business conducted, in all business sectors discussed in the evidence of record, Nebraska deposits and loans account for less than 20% of Commercial Federal's total business.  Under such facts, Commercial Federal's business activities are not localized within any state, including Nebraska.

Dorado argues that despite any lack of "localized" activity by Commercial Federal, this court should exercise jurisdiction under the analysis and principles applicable to national banking associations.  Specifically, Dorado argues that even if Commercial Federal's operations are not localized in Nebraska,

10

complete diversity exists because Dorado is a California corporation, and Commercial Federal, with offices and branch locations in eight states, has no physical presence in California.[3]  However, the citizenship of national banking associations is determined by 28 U.S.C. § 1348, and that statute does not apply to federal savings banks such as Commercial Federal.

Dorado argues that strictly construing federal statutes in a manner that affords a federal forum for national bank associations, but denies such a forum to federal savings banks, "defies logic" and thwarts "the purposes and spirit of federal diversity jurisdiction. . . ."  Filing 13 (Dorado's brief) at 7-8.  This court is not, however, vested with the authority to re-write federal statutes and thereby correct perceived inconsistencies or redefine its jurisdiction based on public policy arguments.  This court's jurisdiction is defined by Congress.  In the context of state law claims, such as the breach of contract action at issue in this case, the Constitution reserves to the states the power to provide for the determination

---

[3] Some courts have held that a national banking association is a citizen of every state where it operates a branch office, (see Wachovia Bank v. Schmidt, 388 F.3d 414 (4th Cir. 2004)(citing World Trade Center Properties, LLC v. Hartford Fire Ins. Co., 345 F.3d 154, 161 (2d Cir. 2003)), while other courts have held that a national banking association is a citizen of only the state where the bank's principal office is "located," or where the office listed in its organization certificate is "located."  See Firstar Bank v. Faul, 253 F.3d 982, 993-94 (7th Cir. 2001), and Horton v. Bank One, 387 F.3d 426 (5th Cir. 2004).  See also Engelmeyer v. Production Credit Ass'n of Midlands, 652 F. Supp. 1235, 1237 (D.S.D. 1987)(holding that the Production Credit Association (PCA) headquartered in Omaha, Nebraska was a Nebraska citizen for diversity purposes where, under the language of 12 U.S.C. § 2258, PCAs "shall for the purposes of jurisdiction be deemed to be a citizen of the state, commonwealth, or District of Columbia in which its principal office is located.").

of controversies in their courts.  "Due regard for the rightful independence of state governments," requires federal courts to "scrupulously confine their own jurisdiction to the precise limits" set by Congress.  Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-109 (1941).

Based on the express language of 28 U.S.C. § 1332, I conclude this court lacks diversity subject matter jurisdiction.  Though Dorado is a California citizen, Commercial Federal is a national citizen and not the citizen of any state.  Dorado and Commercial Federal are not, therefore, "citizens of different States."  28 U.S.C. § 1332(a)(1).

IT IS THEREFORE HEREBY ORDERED:  The plaintiff's Motion for Remand, filing 9, is granted.

DATED this 13th day of September, 2005.

> BY THE COURT:
>
> s/ *David L. Piester*
> David L. Piester
> United States Magistrate Judge